UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AMANDA KAY ANDERSON,

    Plaintiff,                                       Hon. Ellen S. Carmody

v.                                                     Case No. 1:04-CV-334

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/


**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. On August 26, 2004, the parties consented to proceed before the undersigned for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred this case to me. (Dkt. #14).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter is remanded for the awarding of benefits**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 19 years of age at the time of the ALJ's decision. (Tr. 15). Plaintiff participated (almost exclusively) in special education classes and was graduated from high school pursuant to an "alternative graduation plan." (Tr. 104, 185). She has no past relevant work experience. (Tr. 15).

On January 8, 1997, Plaintiff (then a minor) applied for disability benefits. (Tr. 14). Finding that Plaintiff satisfied the requirements of section 112.05C (Mental Retardation) of the Listing of Impairments, the Commissioner awarded benefits to Plaintiff. These benefits were later terminated because Plaintiff (i.e., her family) "no longer met the income and resource requirements of Title XVI of the Social Security Act." *Id.* Plaintiff has not challenged this determination.

Plaintiff applied for benefits on January 8, 2002, alleging that she had been disabled since January 1, 1997, due to mental impairments. (Tr. 45-48, 78). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-44). On April 9, 2003, Plaintiff appeared before ALJ Larry Temin, with testimony being offered by Plaintiff, Plaintiff's mother, and vocational expert, John Petrovich. (Tr. 167-212). In a written decision dated May 19, 2003, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 14-22). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final

decision in the matter. (Tr. 5-8). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

I.      Mental Impairments

On September 6, 2001, psychologist Paul Brown completed a Multidisciplinary Evaluation Team (MET) Report regarding whether Plaintiff "continues to require special education services." (Tr. 112-14). Brown reported that Plaintiff had been administered (in 1995) the Wechsler Intelligence Scale for Children - Third Edition (WISC-III), the results of which revealed that she possessed a verbal IQ of 62, a performance IQ of 55, and a full-scale IQ of 55. (Tr. 112-13). Brown reported that Plaintiff's performance placed her in the "significantly below average range" of functioning. (Tr. 113).

As part of Brown's evaluation, Plaintiff participated in the Woodcock-Johnson Tests of Achievement - Third Edition (WJ-III), which measured her abilities in the areas of reading, math, and writing. (Tr. 112-13). Plaintiff's performance on the writing skills portion of the test placed her in the second percentile, but her performance in every other area of the assessment placed her in the "<.1" percentile. (Tr. 113). In other words, this testing revealed that more than 99.9 percent of the populace function at a level higher than Plaintiff.

As part of this evaluation Marilyn Zmudzinski, Plaintiff's special needs teacher, reported that Plaintiff "has matured during the last few years" and "gives 100% in all areas," but nonetheless "continues to require special education services in order to be successful in school, as her reading, math and writing skills are significantly below grade level." (Tr. 112). Brown also

reported that Plaintiff's "adaptive behaviors skills have been quite consistent over the years, indicating difficulty in this area." (Tr. 114). Brown concluded that Plaintiff continued to "qualify for special education services as an educable mentally impaired student." *Id.*

On February 7, 2002, Ms. Zmudzinski completed a questionnaire regarding Plaintiff's activities. (Tr. 87-92). According to Zmudzinski, Plaintiff "helps with school chores" and "talks and socializes with friends." (Tr. 87). Zmudzinski reported that Plaintiff "has lots of friends," "acts as a mediator between people who don't get along," and is "very cooperative and friendly to all adults." (Tr. 88). She further reported that Plaintiff "participates to her optimum, discusses, takes turns, is serious as well as humorous." Zmudzinski reported that she had known Plaintiff for three years, during which time Plaintiff "has matured in all areas." *Id.* Zmudzinski also reported on Plaintiff's various out-of-school activities. According to Zmudzinski, Plaintiff engaged in a variety of activities normal for a girl her age.[1] (Tr. 87-92).

On February 21, 2002, Plaintiff participated in the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III), the results of which revealed that she possesses a verbal IQ of 71, a performance IQ of 64, and a full-scale IQ of 65. (Tr. 127). Plaintiff's performance placed her in "the mildly retarded range of intelligence and at the 1st percentile among her peers." *Id.* Plaintiff's "greatest weaknesses" were in the areas of "non-verbal reasoning" and "speed of learning." (Tr. 128). The examiner reported that Plaintiff was "attentive, cooperative, and appeared to give her best

---

[1] Such comments are of little value, however, as Zmudzinski does not possess first-hand knowledge of Plaintiff's out-of-school activities. She possesses no first-hand knowledge of the activities in which Plaintiff engaged and, more importantly, possesses no first-hand knowledge regarding Plaintiff's ability to perform such activities without difficulty or assistance. Nonetheless, even if her comments are completely accurate such does not alter the analysis or result in this matter.

effort. Thus, these results are believed to be an accurate reflection of her current intellectual functioning." *Id.*

On April 29, 2002, Ms. Zmudzinski authored a letter describing "the classroom, classes and program from which [Plaintiff] graduated." (Tr. 104-05). According to Zmudzinski, Plaintiff participated in a "categorical classroom for the 3 years she spent at Cadillac High School." (Tr. 104). Categorical classrooms are "for students who require more than three hours per day in special needs classes." Plaintiff experienced "difficulty" with written expression, reading fluency and comprehension, and was able to add and subtract, but experienced "difficulty" making change.

According to Zmudzinski, Plaintiff demonstrated a "flair for working." She further reported, however, that Plaintiff would experience "difficulty on the job with day to day problem solving" and "would need supervision for this area." Zmudzinski reported that Plaintiff requires assistance obtaining housing and managing money. She also reported that Plaintiff "would not be able to obtain a driver's license because of her limited ability to make decisions and make them quickly." Zmudzinski concluded by observing that Plaintiff's family "is positive and encouraging and this is why [Plaintiff] has been able to progress so far considering her limited abilities." *Id.*

II.    Vision Impairments

On November 6, 1998, Plaintiff was examined by Dr. Matthew Madion. (Tr. 125). The doctor reported that Plaintiff suffered from (1) bilateral congenital cataracts, (2) myopia, and (3) "possible" bilateral amblyopia. He reported that Plaintiff's best corrected vision was 20/40 and 20/50. *Id.*

6

On February 21, 2001, Plaintiff was examined by Dr. Madion. (Tr. 124). Plaintiff reported that she was experiencing blurred vision and difficulty reading computer screens. Dr. Madion reported that Plaintiff was suffering from bilateral congenital cataracts and myopia. He reported that Plaintiff's best corrected vision was 20/50 and 20/50. *Id.*

On March 19, 2003, Plaintiff was examined by Dr. Madion. (Tr. 151). Plaintiff reported that she was experiencing "bothersome" glare and was "not able to work many hours due to [her] vision." *Id.*

On April 15, 2003, Dr. Madion authored a letter regarding Plaintiff's eye impairments. (Tr. 152). Specifically, the doctor reported the following:

> Amanda does have congenital cataracts as well as near sightedness. With her congenital cataracts her best corrected visual acuity is 20/40 in the right eye and 20/50 in the left eye. She therefore has subnormal vision. She is not legally blind. Certainly, her level of acuity would put her at a disadvantage when it comes to very fine detail and very fine print recognition. Many individuals with this level of acuity however function well with larger print and magnification.

*Id.*

At the administrative hearing, Plaintiff testified that she experiences difficulty reading because of her poor eyesight. (Tr. 172). Plaintiff also testified that she can work only four hours each week because of her inability to read the print on computer screens. (Tr. 174-75).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from borderline intellectual functioning, a severe impairment which fails to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ determined that Plaintiff had never performed substantial gainful activity, but that there nonetheless

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

existed a significant number of jobs which she could perform despite her limitations. (Tr. 19-20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform "unskilled work at any exertional level" subject to the following limitations: (1) she cannot perform work that requires the ability to accurately visualize very fine detail or read very fine print, (2) she can perform only simple and routine work, (3) she can understand, remember, and carry out only short and simple instructions, (4) she can perform only simple work-related decisions, and (5) she can perform only very simple reading, writing, and math. (Tr. 19).

The ALJ found that Plaintiff had no past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff can perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding.  Such was the case here, as the ALJ questioned vocational expert John Petrovich.

The vocational expert testified that there existed approximately 199,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 205-07). As such represents a significant number of jobs, *see*, *e.g.*, *Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990), the ALJ concluded that Plaintiff was not disabled as defined by the Act.

      a. Plaintiff meets the requirements of section 12.05 of the Listing of Impairments

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that she satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. Section 12.05 of the Listing provides the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>     1. Marked restriction of activities of daily living; or

11

    2. Marked difficulties in maintaining social functioning; or

    3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

    4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2003).

As discussed below, the Court concludes that Plaintiff satisfies section 12.05C of this particular Listing. As previously noted, testing conducted on February 21, 2002, revealed that Plaintiff possesses a verbal IQ of 71, a performance IQ of 64, and a full-scale IQ of 65. Plaintiff, therefore, satisfies the first requirement of this provision. As for the second requirement, the evidence reveals that Plaintiff's vision impairment results in significant work-related limitations.

The medical evidence reveals that Plaintiff suffers from severe visual impairments which adversely impact her ability to perform work activities. As Plaintiff's treating physician reported, her condition necessitates that she utilize "larger print and magnification." Despite the negative vocational impact of Plaintiff's vision impairment, the ALJ concluded that such did not constitute a "severe" impairment. This conclusion is not supported by substantial evidence.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 416.920, and which lasts or can be expected to last "for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.921; *see also*, *Shafer v. Apfel*, 2000 WL 33146935 at *10 (D. Kan., Dec. 22, 2000).

To establish that she suffers from a "severe" impairment, Plaintiff need only establish that she is limited with respect to any one such activity. *See Clemente v. Schweiker*, 564 F.Supp. 271, 272-73 (E.D.N.Y. 1983). This is consistent with the observation that an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (citations omitted).

In articulating Plaintiff's RFC, the ALJ concluded that Plaintiff was unable to perform work that required the ability to "accurately visualize very fine detail or read very fine print." This assessment, arguably conservative but nonetheless consistent with the medical evidence, is utterly inconsistent with the finding that Plaintiff's vision impairment is less than severe. Contrary to the ALJ's conclusion, Plaintiff's vision impairment is a severe impairment. Furthermore, as a severe impairment it satisfies the second prong of section 12.05C. *See Markle v. Barnhart*, 324 F.3d 182, 188 (3rd Cir. 2003). Accordingly, the ALJ's decision that Plaintiff's impairments failed to satisfy section 12.05 of the Listing of Impairments is not supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. The Court further concludes that Plaintiff has established that her impairments satisfy the requirements of section 12.05C of the Listing of Impairments. Accordingly, the Commissioner's decision is **reversed and this matter remanded for the granting of benefits**. A judgment consistent with this opinion will enter.

Date: August 31, 2005                                     /s/ Ellen S. Carmody
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge